IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRISTINA DESHAUN MYHRES, | § § | |
| Plaintiff, | § § | |
| V. | § | CIVIL ACTION NO. H-18-2481 |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 13) and Plaintiff's Cross Motion for Summary Judgment (Document Nos. 16 & 17). Having considered the cross motions for summary judgment, each side's response to the other's motion (Document Nos. 17 & 18), the administrative record, the written decision of the Administrative Law Judge dated March 29, 2017, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

**I.    Introduction**

Plaintiff Kristina Myhres ("Myhres") brings this action pursuant to Section 205(g) of the

---

[1] On January 28, 2019, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 12.

Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits. Myhres claims in this appeal that: (1) "The ALJ erred in finding that Plaintiff's impairments are not of listing level severity;" and (2) "The ALJ failed to properly weigh the medical evidence of record" leading to "an erroneous finding that Plaintiff is not disabled." The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's March 29, 2017, decision, that the decision comports with applicable law, and that the decision should be affirmed.

## II. Procedural History

In August 2015, Myhres filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), claiming that she had been unable to work since March 26, 2014, as a result of vasovagal syncope, schizophrenia, bipolar disorder, and manic depression (Tr. 314-324, 357). The Social Security Administration denied the applications at the initial and reconsideration stages. After that, Myhres requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, David R. Gutierrez, held a hearing on October 12, 2016, which was reconvened on December 23, 2016, following a private psychological consultative evaluation, at which Myhres' claims were considered *de novo*. (Tr. 89-141). Thereafter, on March 29, 2017, the ALJ issued his decision finding Myhres not disabled. (Tr. 20-35).

Myhres sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are

present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. On October 12, 2017, the Appeals Council found no basis for review (Tr. 1-4), and the ALJ's decision thus became final.

Myhres filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against

3

the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

IV.   **Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs

are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ found at step one that Myhres had not engaged in substantial gainful activity since March 26, 2014, her alleged onset date. At step two, the ALJ determined that Myhres had the following severe impairments: seizure disorder, borderline personality disorder, and major depressive disorder; but that her cervical lesions, gastro-esophageal reflux disease, vagal syncope, and history of asthma were non-severe impairments; and that her alleged bipolar disorder and post traumatic stress disorder were "not medically determinable impairments." At step three, the ALJ determined that Myhres did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 12.05. Prior to consideration of steps four and five, the ALJ determined that Myhres had the "residual functional capacity to: lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour workday with normal breaks; and sit six hours in an eight-hour workday with normal breaks. The work could not require climbing ropes, ladders, or scaffolds and could not be at unprotected heights or in the presence of dangerous moving machinery. Additionally, the work is limited to understanding, remembering, and carrying out simple one, two, or three-step simple tasks with occasional interaction with the public and co-workers." (Tr. 28). At step four, the ALJ determined that Myhres had no past relevant work, with her earnings history not reflecting "wages at substantial gainful activity levels in the last fifteen years." (Tr. 33). At step five, using the residual functional capacity he had formulated, and considering the testimony of a vocational expert, the ALJ concluded that Myhres was not disabled because she could perform jobs in the light exertional range as office

cleaner and laundry folder, and in the sedentary exertional range as document preparer and sorter.

In this appeal, Myhres argues that the ALJ erred in the step three assessment of whether she met Listing 12.05 for intellectual disorders. Myhres also argues that ALJ erred by giving greater weight to the opinions of non-examining physicians over the opinions of two consultative physicians.

In determining whether there is substantial evidence to support the ALJ's decision, including the step three assessment and the RFC determination, the court generally considers four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren*, 925 F.2d at 126. Because, however, Myhres' two claims on appeal are both limited and discrete, that four factor analysis will not be conducted.

## V. Discussion

Myhres raises two claims in this appeal. First, Myhres contends that the ALJ erred in his consideration of whether she met Listing 12.05. That error, Myhres posits, was based on the ALJ's improper rejection of the IQ testing results from Myhres' consultative evaluation with Dr. Eva Stubits, and the ALJ's failure to order new, or additional IQ testing. Second, Myhres contends that the ALJ erred when he gave greater weight to the opinions of the testifying medical expert (Dr. Darren Hamill) and the State Agency consulting physicians, all of whom merely reviewed her medical records. According to Myhres, if the ALJ had properly credited the results of the testing and evaluation done by Dr. Eva Stubits in October 2016, and the opinion of Dr. Michael Osborne in November 2015 in connection with his consultative evaluation, she would have been found disabled.

A.     **Listing 12.05**

Listing 12.05 for intellectual disorders, which was effective as of January 17, 2017, provides for presumptive disability if the following requirements of subpart A. or B. are met:

A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:
a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
a. Understand, remember, or apply information (see 12.00E1); or
b. Interact with others (see 12.00E2); or
c. Concentrate, persist, or maintain pace (see 12.00E3); or
d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. As set forth above, the burden of proof at step three – that a Listing has been met or equaled – is on the claimant. Here, as thoroughly explained by the ALJ in his decision, Myhres did not meet that burden. In addition, having reviewed the record, the undersigned concludes that substantial evidence supports the ALJ's step three finding relative to Listing 12.05. In determining that Myhres did not meet that Listing, the ALJ wrote:

> Turning to Listing 12.05, the only cognitive function testing of record shows a full-scale score of 63. However, the severity of the claimant's mental impairment does not meet or equal the requirements of Listing 12.05.
>
> Most fundamentally, in order to meet Listing 12.05, the medical evidence of record must satisfy the diagnostic description in the introductory paragraph. This paragraph states that an "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning *initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age [twenty-two]*" (emphasis added). The evidence does not satisfy these parameters because there is no evidence establishing deficits in adaptive functioning initially manifested during the developmental period. While there is evidence that the claimant took special education classes in school, none of the treating sources diagnosed an intellectual disability and Dr. Hamill [the testifying medical expert] did not find evidence of one. Indeed ... the evidence establishes that the claimant is fully independent in her activities of daily living, with scant exceptions, and she did not give full effort during the testing. Furthermore, the score was after the claimant had attained the age of 22 and she was in her late 20's when the testing was administered. Thus, because there is no evidence establishing deficits in adaptive functioning initially manifested before the age of twenty-two, the claimant's impairments cannot meet any part of Listing 12.05.
>
> Even were the undersigned to assume that the claimant's impairments met the requirements of the introductory paragraph, the claimant's impairments still would not meet or equal Listing 12.05B or 12.05C, as the claimant's representative argued, because the validity of the claimant's IQ scores are in question. This is for two reasons. First, as stated in Listing 12.00(6)(a), the results of an intelligence test should comment on whether the IQ scores are considered valid and consistent with the developmental history and degree of functional limitation. Eva Stubits, Ph.D., who administered the intelligence test concluded the claimant gave minimal to fair effort, which is substandard. Second, Dr. Hamill also questioned the validity of the testing. The undersigned notes the provisional diagnosis given by Dr. Stubits is the only reference to an intellectual disability and the claimant demonstrated average

> intellectual function in September 2016, denying a diagnosis of even borderline intellectual function. The undersigned is, therefore, unable to confirm the validity of the tests or even the claimant's level of effort in completing the examination. This leaves these scores open to question.
>
> The undersigned has also considered whether the claimant's impairments could meet or equal the requirements of Listing 12.05A or 12.05D. The claimant's impairments do not meet or equal Listing 12.05A because the claimant does not depend on others for personal needs, such as toileting, eating, dressing, or bathing. The claimant's impairments do not meet or equal Listing 12.05D because the claimant does not have marked or extreme limitation in any of the broad areas of function, discussed above.

(Tr. 27) (internal references omitted). The ALJ's assessment at step three is consistent with the evidence in the record, and is therefore supported by substantial evidence.[2]

First, key to Listing 12.05 is a valid, full scale IQ score of 70 or less. Here, the ALJ determined that the full scale IQ score found by Dr. Eva Stubits in the private psychological evaluation she conducted of Myhres was not a valid score. That was based on the ALJ's determination that Myhres did not exhibit full or maximum effort on the tests. That determination is supported by the following contents of Dr. Stubits report:

> Ms. Myhres demonstrated minimal to fair motivation and effort with the intellectual and cognitive assessment testing, thus, reflecting an accurate indication of her current level of intellectual functioning.
>
> * * *
>
> Behaviorally, she was able to cooperate in the demands of testing. She approached the testing willingly and she demonstrated a minimal to fair level of motivation and effort overall.

---

[2] The ALJ makes reference to Listing 12.05C and 12.05D. Listing 12.05, however, was revised, effective January 17, 2017, and as of that date no longer contained subpart C and D. *See Hill v. Berryhill*, No. 7:17-CV-00097-D, 2018 WL 3800246, at *4 n. 4(E.D.N.C. July 24, 2018), *report and recommendation adopted*, No. 7:17-CV-97-D, 2018 WL 3785397 (E.D.N.C. Aug. 9, 2018); see also on REVISED MEDICAL CRITERIA FOR EVALUATING MENTAL DISORDERS, 81 Fed. Reg. 66138 (Sept. 26, 2016).

10

(Tr. 445, 447). While Myhres argues that these statements about her effort in Dr. Stubits' report should not have been taken by the ALJ as rendering the IQ score, itself, invalid, the record shows that it was not just the ALJ, who questioned the validity of the scores, and Dr. Stubits' interpretation of them. At the reconvened hearing on December 23, 2016, Dr. Darren Hamill testified:

> I'm skeptical to these scores, Your Honor. Again, we don't have anything, to my knowledge, that were before the developmental period. And my other concern, she tells Mr. Lou she has not smoked K2 in over a year. The medical record does not support that, so I don't know how valid these scores are.

(Tr. 136). In addition, as explained fully by the ALJ, even if the IQ scores from Dr. Stubits' evaluation were fully credited, none of the other requirements of Listing 12.05 were met on this record. With respect to the part A. criteria, the record does not contain evidence to support subpart 2: "[s]ignificant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing)." Instead, there is substantial evidence in the record that Myhres has no deficits in the type of "adaptive functioning" mentioned in 12.05(A)(2). As for the part B. criteria, the record also does not contain evidence to support the requirements of subpart 2: "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: a. Understand, remember, or apply information (see 12.00E1); or b. Interact with others (see 12.00E2); or c. Concentrate, persist, or maintain pace (see 12.00E3); or d. Adapt or manage oneself (see 12.00E4)." That type of adaptive functioning was also addressed by the ALJ at length:

> In understanding, remembering, or applying information, the claimant has moderate limitations. She was oriented with normal judgment in April 2014 and logical thought process with no delusions in October 2015. The claimant's cognitive function was intact in January 2016 and she showed a logical thought process in

> August 2016 as well. She also indicated she is able to manage her finances during the November 2015 psychological consultative exam. This is inconsistent with more than moderate limitation in this area.
>
> In interacting with others, the claimant has moderate limitations. She reported going to jail for biting her brother in December 2016. Despite her complaints of difficulty getting along with others, the claimant indicated she attends church in her function report. Additionally, she testified to living with extended family in a trailer and she was forthcoming and cooperative during the consultative exam. As well, State Agency Psychological Consultants Leela Reddy, M.D., and Sallie Boulos-Sophy, Ph.D. found moderate limitation in this area.
>
> With regards to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. Her attention was good and intact in October 2015 and January 2016. However, the claimant's concentration was poor in August 2016. Yet she reported performing normal daily activities and being able to manage her finances during the November 2015 consultative exam. As well, she demonstrated adequate concentration at that time as well. Additionally, Dr. Reddy and Dr. Boulos-Sophy found moderate limitation in this area as well.
>
> As for adapting or managing oneself, the claimant has experienced moderate limitations. The evidence did not show any psychiatric hospitalizations since the alleged onset date. Further, several mental status evaluations of record did not show severe limitation in the claimant's ability to manage[] herself. The evidence is inconsistent with more than moderate limitation in this area.

(Tr. 26) (internal references omitted). These findings by the ALJ relative to the type of "adaptive functioning" mentioned in 12.05(B)(2) are supported by substantial evidence in the record, including the opinions of the State Agency Psychological consultants, Dr. Reddy and Dr. Boulos-Sophy. As such, irrespective of the ALJ's determination that Myhres' full scale IQ score from Dr. Stubits' evaluation was not valid, substantial evidence supports the ALJ's determination regarding the remainder of the requirements for Listing 12.05A and 12.05B. The ALJ, therefore, did not err in his consideration of Listing 12.05, and the ALJ's determinations in that regard are supported by substantial evidence.

12

## B. Expert Medical Opinions

Under the controlling regulations, the ALJ is required to consider all the medical opinions in the record. *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017); 20 C.F.R. § 1527(c). A medical opinion is a "statement[] from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Generally, more weight is given to the "medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [the claimant]." 20 C.F.R. § 1527(c)(1). But, "less weight, little weight, or even no weight" may be given to a medical expert's opinion if there is good cause for doing so, *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), and "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

Here, Myhres complains about the treatment and weight given to the opinions of two physicians who examined her, Dr. Michael in November 2015, and Dr. Eva Stubits in October 2016, as well as the evidence in the record from her treating physicians at MHMR. According to Myhres, "but for the ALJ's failure to properly evaluate the medical opinions of record, Plaintiff would likely have been found disabled." Plaintiff's Motion (Document No. 16) at 13.

First, it must be noted that there are no medical *opinions* in the record from Plaintiff's treating physicians. All there is from Plaintiff's treating physicians are notes about her treatment, and her mental status at the time of such treatment. As for the opinions of Dr. Osborne and Dr. Stubits, the ALJ explained, as follows, the reasons for giving those opinions little weight:

13

> As for the opinion evidence, November 2015 psychological consultative examiner Michael Osborne, Ph.D., concluded the claimant would benefit from vocational services for job placement with treatment. Dr. Osborne also made an ambiguous statement that the claimant "cannot likely adequately function in a regular work setting". However, there is no function-by-function analysis or explanation of what a regular work setting is in Dr. Osborne's indication. A conclusory statement that a claimant cannot work or function in a regular work setting does not constitute a medical opinion within the meaning of the regulations. Additionally, Dr. Hamill, a psychological expert, was unsure of the meaning of Dr. Osborne's vague statement in clinical terms. Moreover, this is essentially a conclusion on the final issue of disability, which is reserved for the undersigned as the Commissioner's representative. The undersigned considered Dr. Osborne's opinion but gives it limited weight. Dr. Reddy and Dr. Boulos-Sophy made findings generally consistent with the restrictions contained in the residual functional capacity evaluation. The undersigned gives these opinions great weight. Based on the evidence, Dr. Hamill also opined the restrictions contained in the residual functional capacity evaluation adequately resolve the claimant's limitations in work function due to her impairments. The undersigned gives Dr. Hamill's opinions great weight with the exception of his opinion regarding substance abuse.
>
> * * *
>
> The claimant's attorney sent her for a private consultative exam with Eva Stubits, Ph.D., in October 2016. Dr. Stubits found a full-scale IQ of 63 and provisionally diagnosed a mild intellectual disability. However, despite treatment and evaluation, no other source mentioned an intellectual disability. Instead, average intellectual functioning was noted in September 2016 and the claimant denied a diagnosis of borderline intellectual function at that time. Dr. Hamill considered Dr. Stubits' opinion but did not find the test to be a valid measure of the claimant's true cognitive function. Further, Dr. Hamill was suspicious of drug use at the time of the testing and the positive drug screen in September tends to confirm Dr. Hamill's conclusion the IQ score of 63 is likely related to drug use. Moreover, Dr. Stubits found the claimant demonstrated a minimal to fair level of motivation and effort, which is inconsistent with a valid measure of function. Although considered, the undersigned gives Dr. Stubits' opinion limited weight. This includes the finding of completely debilitated function beyond what other sources found and based on erroneous testing as well as the claimant's subjective complaints. Dr. Hamill's opinion is more consistent with the evidentiary record than is Dr. Stubits' opinion.

(Tr. 31, 32) (internal references omitted). Those reasons are supported by substantial evidence in the record. In particular, two state agency physicians who reviewed Myhres' medical records

provided opinions that aligned with the ALJ's RFC determination (Tr. 142-165; 168-191). In addition, Dr. Hamill, the medical expert who testified at the initial hearing, and at the re-convened hearing, opined about Myhres' residual functional capacity – both in physical and mental terms – as aligning with the RFC found by the ALJ (Tr. 114: "she's going to be moderate in the social domain. She's still going to be moderate in concentration, persistence, and pace"; Tr. 115: "I think it would be very simple, one, two, three-step tasks;" "General public, and coworkers, that would be based on zero to a third;" "she would be able to respond to usual work situations . . . change in the routine work setting . . . [m]aintain concentration and attention for two-hour segments over an eight-hour period . . . [a]nd complete a normal work week without excessive interruptions from psychologically-based symptoms"). In addition, Dr. Hamill testified about his skepticism of the IQ scores from Dr. Stubits' evaluation, and his inability to assess Dr. Osborne's vague opinion about Myhres' inability to perform in a regular work setting. (Tr. 137: "With respect to Dr. Osborne, I did see that statement. I haven't actually read this one. Unlikely to perform in a regular work setting. I don't know these – medical source statements are driving me a bit crazy because I don't know what a regular work setting is). Because the ALJ gave particularized reasons for giving little weight to the opinions of Dr. Osborne and Dr. Stubits, reasons that are supported by substantial evidence in the record, the ALJ did not err in his consideration of the expert medical opinions in the record.

## VI. Conclusion and Order

Based on the foregoing and the conclusions that the ALJ's step three determination that Myhres did not meet or equal Listing 12.05 is supported by substantial evidence, and that the ALJ properly considered all the medical opinions in the record, it is

15

ORDERED that Defendant's Motion for Summary Judgment (Document No. 13) is GRANTED, Plaintiff's Motion for Summary Judgment (Document Nos. 16 & 17) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 19th day of March, 2020.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE